UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

MOTOR VALET, INC. and DONALD V. PENOYER
as guardian of LEVERNE PENOYER,

                        Plaintiffs,

v.                                         5:08-CV-0477
                                                     (GTS/GHL)

GUARDIAN LIFE INSURANCE COMPANY
OF NORTH AMERICA,

                        Defendant.
_____

APPEARANCES:                                     OF COUNSEL:

MENTER, RUDIN & TRIVELPIECE, PC         CELIA E. MOORE, ESQ.
Counsel for Plaintiffs                           MITCHELL J. KATZ, ESQ.
308 Maltbie Street, Suite 200
Syracuse, New York 13204

PHILLIPS LYTLE LLP                               PAUL K. STECKER, ESQ.
Counsel for Defendant
Suite 3400, One HSBC Center
Buffalo, New York 14203-2887

GEORGE H. LOWE, United States Magistrate Judge

## ORDER

      With the consent of the parties (Dkt. No. 14), this matter was referred to the undersigned by the Honorable Glenn T. Suddaby, United States District Judge, to hear and finally determine Plaintiffs' motion to remand. (Dkt. No. 15.) After an initial review of the parties' papers, I requested oral argument. (Dkt. No. 16.) I heard the parties' arguments on January 9, 2009. After considering the parties' papers and their oral arguments, I find that Plaintiffs' lawsuit is a claim by a plan participant to recover benefits from an employee benefit plan. Therefore, as

discussed more fully below, the motion to remand (Dkt. No. 7) is **DENIED**.

I.      **FACTUAL AND PROCEDURAL SUMMARY**

Donald V. Penoyer is the president, treasurer and sole shareholder of Motor Valet, Inc. (Dkt No. 7-3 at ¶ 1.)

In 1979, Motor Valet owned a convenience store/gas station, a restaurant, apartment rental properties, a motor court, a lumber and home center, and a laundromat. (Dkt. No. 7-3 at ¶ 4.) In September 1979, Defendant Guardian Life Insurance of America ("Guardian") issued a Small Group Insurance Policy to Motor Valet and provided Motor Valet with "the materials you will need to administer your plan." (Dkt. Nos. 7-3 at ¶ 2 and 9-3.) In its application for the policy, Motor Valet agreed to pay premiums under the policy and to "make the plan available to all its present and future eligible employees." (Dkt. No. 9-2.) At the time it was issued, the policy covered Donald Penoyer, his father, his brother, and his mother, LaVerne Penoyer. (Dkt. No. 7-3 at ¶ 6.) From 1980 to 1982, employees Paul L. Auringer and Harley L. Durfey, who are not related to the Penoyers, were also covered under the policy. (Dkt. Nos. 9-5, 9-6, 11 at ¶3.)

In 1985, LaVerne Penoyer contracted viral herpes simplex encephalitis, which rendered her completely disabled. She required 24-hour-per-day private duty skilled nursing. (Dkt. No. 7-3 at ¶ 10.)

In December 2007, Guardian informed Donald Penoyer that the insurance policy would be discontinued on April 15, 2008[1]. (Dkt. No. 7-3 at ¶ 11.) At the time of the notice of discontinuance, the policy covered Donald Penoyer, his son, and LaVerne Penoyer. (Dkt. No. 7-

---

[1]    The parties later agreed that Guardian was required to provide LaVerne Penoyer with a 12-month extension of benefits, to April 15, 2009. (Dkt. No. 7-3 at ¶ 13.)

3 at ¶ 14.)  Motor Valet's business from December 2007 to the present time consists of owning a laundromat and apartment rental properties in Oswego County.  (Dkt. No. 7-3 at ¶ 16.)

On April 11, 2008, Motor Valet and Donald Penoyer, acting as the guardian of LaVerne Penoyer, filed suit against Guardian in New York Supreme Court, County of Oswego, seeking a declaratory judgment that the policy remained in full force and effect.  (Dkt. No. 1-2.)  On May 5, 2008, Guardian removed the case to this Court on the grounds that Plaintiffs' state court complaint is preempted by the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001-1381 ("ERISA").  (Dkt. No. 1.)  Plaintiffs now move pursuant to 28 U.S.C. § 1447(c) to remand the action to state court.  (Dkt. No. 7.)  Guardian opposes the motion.  (Dkt. No. 9.)  Plaintiffs have filed a reply.  (Dkt. No. 11.)

## II.   LEGAL STANDARD

When a case has been removed to federal court from state court, the case shall be remanded "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction."  28 U.S.C. § 1447(c) (2006).  When a plaintiff moves to remand based on lack of subject matter jurisdiction, the burden is on the defendant to demonstrate the propriety of removal.  *Grimo v. Blue Cross/Blue Shield*, 34 F.3d 148, 151 (2d Cir. 1994).

## III.   DISCUSSION

ERISA comprehensively regulates employee welfare benefit plans that provide "medical, surgical or hospital care, or benefits in the event of sickness, accident, disability [or] death ..."  29 U.S.C. § 1002(1)(1999).  "Any lawsuit by a plan participant to recover benefits from an employee benefit plan falls under ERISA ... which provides the exclusive cause of action for resolution of such disputes."  *Owens v. Metro. Life Ins. Co.*, 865 F. Supp. 100, 102 (N.D.N.Y.

1994). Any claim by a participant to recover benefits under an ERISA-governed plan "is necessarily federal in character" and a case that includes such a claim is preempted and removable to federal court even "though it purports to raise only state law claims." *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 67 (1987).

The issue, then, is whether Plaintiffs' lawsuit is a claim by a plan participant to recover benefits from an employee benefit plan. An "employee benefit plan" is (1) a plan, fund or program; (2) established or maintained; (3) by an employer or by an employee organization, or both; (4) for the purpose of providing medical, surgical, hospital care, sickness, accident, disability, death, unemployment or vacation benefits, apprenticeship or other training programs, day care centers, scholarship funds, prepaid legal services or severance benefits; (5) to participants or their beneficiaries. *Donovan v. Dillingham*, 688 F.2d 1367, 1371 (11th Cir. 1982)[2].

Plaintiffs argue that (1) Motor Valet is not an "employer" within the meaning of ERISA; (2) there were no "participants" in the program within the meaning of ERISA; and (3) Motor Valet did not "establish or maintain" the plan[3].

### A.  Motor Valet is an "Employer" Under ERISA.

ERISA applies to any employee benefit plan established or maintained "by any employer

---

[2]  The Second Circuit has cited *Donovan* with approval and referred to its logic as persuasive. *Guilbert v. Gardner*, 480 F.3d 140, 146 (2d Cir. 2007). A leading ERISA treatise refers to the *Donovan* test as "widely followed." James F. Jorden, Waldemar J. Pflepsen, Jr. & Stephen H. Goldberg, Handbook on ERISA Litigation 2-8 (3d ed. 2009).

[3]  Plaintiffs also argue, essentially, that Guardian is estopped from removing this case to federal court because Guardian failed to assert an ERISA preemption defense in response to an earlier state lawsuit regarding LaVerne Penoyer's care. (Dkt. No. 7-5 at 18-19.) Plaintiffs cite no authority for this argument, and I find it to be without merit.

engaged in commerce or in any industry or activity affecting commerce." 29 U.S.C. § 1003(a)(1) (1999).  Plaintiffs argue that because Motor Valet operates businesses within one county, it is not engaged in commerce or in any industry or activity affecting commerce.  (Dkt. No. 7-5 at 4-7.)

As defined by ERISA, the term "industry or activity affecting commerce" means "any activity, business, or industry in commerce[4] or in which a labor dispute would hinder or obstruct commerce or the free flow of commerce, and includes any activity or industry 'affecting commerce' within the meaning of the Labor Management Relations Act or the Railway Labor Act."  29 U.S.C. § 1002(12) (1999).  "When Congress uses the term 'activity affecting commerce,' it is an expression of Congress' intent to regulate 'within the full sweep of its constitutional authority.'" *Winterrowd v. Freedman & Co.*, 724 F.2d 823, (9th Cir. 1984) *(quoting Polish National Alliance v. NLRB*, 322 U.S. 643, 647 (1944))[5].

There is only scant authority analyzing the phrase "any employer engaged in ... any activity affecting commerce" as used in ERISA.  In their briefs, Plaintiffs relied on *Sheffield v. Allstate Life Ins. Co.*, 756 F. Supp. 309 (S.D. Tex. 1991).  In that case, the Southern District of Texas held that a business that offered management advice to "the estates of two families, the

---

[4]   "Commerce" means "trade, traffic, commerce, transportation, or communication between any State and any place outside thereof."  29 U.S.C. § 1002(11) (1999).  At oral argument, Plaintiffs focused largely on the phrase "between any State and any place outside thereof" to support their position that Motor Valet, as a small business located in one county, is not engaged in commerce.

[5]   In *Sheffield v. Allstate Life Ins. Co.*, 756 F. Supp. 309, 310 (S.D. Tex. 1991), cited by Plaintiffs, the court cited *Winterrowd* for the proposition that "ERISA coverage extends to the limit of congressional jurisdiction under the commerce clause, *but it is defined by the labor component of the business rather than its use of the instrumentalities of interstate commerce, crossing state lines, national markets, or other criteria of interstate effect*."  (Emphasis added.)  There is no support for the italicized language anywhere in the *Winterrowd* decision.

principal assets of which are entirely within Texas" was not "demonstrably interstate" because it did not "directly" affect interstate commerce.  The *Sheffield* case is not persuasive.  Two of the three cases on which it rested its analysis that an employer must "directly" affect interstate commerce to fall under ERISA were overruled by the Supreme Court 24 years before the *Sheffield* opinion was written.  *See Burke v. Ford*, 389 U.S. 320 (1967)("[I]t is well established that an activity that does not itself occur in interstate commerce comes within the scope of the Sherman Act if it *substantially* affects interstate commerce") (emphasis added); *Reber v. Provident Life & Accident Ins. Co.*, 93 F. Supp. 2d 995, 1009 (S.D. Ind. 2000).  Moreover, as discussed more fully below, the Supreme Court has held since *Sheffield* was decided that Congress' full authority to regulate economic activity under the Commerce Clause allows it to regulate activities that "substantially" affect interstate commerce.

Defendant's brief cited *Miller v. Travelers Ins. Co.,* 723 F. Supp. 1345, 1346 (E.D. Mo. 1989) and *McNeil v. Time Ins. Co.*, 977 F. Supp. 424, 426, 428 n.4 (N.D. Tex. 1997).  *Miller* involved a law firm: the district court stated that "[t]he extent of interstate communication, travel and commerce necessarily involved in the practice of law today persuades the Court that a law firm employer is within the intended scope of ERISA's coverage of employee benefit plans."  The case before this Court does not involve a law firm.  In *McNeil*, the evidence presented at trial showed that the business sold eyeglasses "which it purchased from suppliers all over the United States."  There is no such evidence before this Court regarding Motor Valet.

In the absence of direct authority on the issue, the Court must reason by analogy.  In another context, the Supreme Court has held that "[t]he rental of real estate is unquestionably an activity that affects commerce."  *Russell v. United States*, 471 U.S. 858, 862 (1985).  It is

undisputed that Motor Valet has, since September 1979, owned apartment rental properties. (Dkt. No. 7-3 at ¶¶ 4, 16.)  Thus, if the holding in *Russell* is applicable here, Motor Valet is engaged in an activity that affects commerce.  This was the primary focus of discussion at the oral argument conducted on January 9, 2009.

*Russell* involved the federal arson statute, 18 U.S.C. § 844, which makes it a federal crime to "maliciously damag[e] or destro[y] ... by means of fire or an explosive, any building ... used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce."  The case was decided in 1985, ten years before the Supreme Court ruled that Congress has the power under the Commerce Clause only to enact legislation that "substantially" affects interstate commerce.  *United States v. Lopez*, 514 U.S. 549 (1995).  In the absence of further action from the Supreme Court, it could be argued that *Lopez* abrogated or overruled *Russell*.  However, after *Lopez*, the Supreme Court reaffirmed the holding in *Russell*.  *Jones v. United States*, 529 U.S. 848, 854 (2000)(holding that owner-occupied residence is not a building "used in ... commerce" within the meaning of the federal arson statute, but reaffirming that a building used as rental property is "used in ... commerce.").

It is appropriate to extend *Russell's* holding that rental property affects commerce to the ERISA context for two related reasons.  First, Congress exercised something less than its full Commerce Clause authority when it enacted the federal arson statute.  *Jones*, 529 U.S. at 854 (Congress' use of the phrase "used in" to qualify the phrase "activity affecting commerce" indicated that Congress did not intend to exercise its full Commerce Clause power).  In contrast, as noted above, Congress intended to invoke its full Commere Clause authority when it enacted ERISA.  *Winterrowd v. Freedman & Co.*, 724 F.2d 823, (9th Cir. 1984).  Logically, therefore, an

7

activity that qualifies as interstate commerce under the narrower arson statute qualifies as an activity affecting interstate commerce under ERISA.

Second, ERISA implicates the economic concerns at the heart of the Commerce Clause in a way that the federal arson statute does not.  As the Supreme Court noted in *Lopez*, Congressional regulations of economic activity have been routinely upheld as a proper exercise of Congress' authority under the Commerce Clause.  Congressional power under the Commerce Clause to criminalize conduct, on the other hand, is more limited.  *Lopez*, 514 U.S. at 559-561. Yet even in this more limited realm of Congressional authority, the Supreme Court has held that Congress has the authority under the Commerce Clause to craft legislation punishing arsonists who damage or destroy buildings used as rental property.  ERISA, in contrast to the arson statute, addresses the very type of economic concerns that have been routinely upheld as valid exercises of Congressional authority under the Commerce Clause.  It follows logically that an activity that "affects commerce" under Congress' more limited power to address criminal conduct certainly "affects commerce" in an area over which Congress has wider authority.

At oral argument, Plaintiffs argued that classifying a small company like Motor Valet as an "employer" under ERISA would allow the "exception to consume the rule."  The Court can conceive of many small companies that would not qualify as "employers" under ERISA. However, Motor Valet is not such a company.  In light of the undisputed fact that Motor Valet operates rental properties and the Supreme Court's holding in *Russell* that such activity affects commerce, this Court cannot find that Motor Valet does not affect commerce.  Therefore, Motor Valet is an "employer" under ERISA.

B.     **Motor Valet's Plan Has "Participants" Under ERISA.**

As discussed above, in order to be considered an employee benefit plan under ERISA, the plan must have "participants." Plaintiffs argue that there are no "participants" in Motor Valet's plan. (Dkt. No. 7-5 at 7-14, 16-18.)

ERISA provides a definition of the term "participant" that the Supreme Court has referred to as "uninformative." *Yates v. Hendon*, 541 U.S. 1, 12 (2004). Under the statutory definition, a "participant" is "any employee or former employee of an employer, ... who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer ..., or whose beneficiaries may be eligible to receive such benefit." 29 U.S.C. § 1002(7) (1999). An "employee," in turn, is "any individual employed by an employer." 29 U.S.C. § 1002(6) (1999).

The Department of Labor's regulation is more cogent and has been relied on by other courts facing this issue under ERISA. *See e.g. Yates,* 541 U.S. at 19-20. Under the regulation, in order for an ERISA plan to exist, it must have "employees" as participants. Under the regulation, "[a]n individual and his or her spouse shall not be deemed to be employees with respect to a trade or business ... which is wholly owned by the individual or by the individual and his or her own spouse." 29 CFR § 2510.3-3 (2003); *Yates*, 541 U.S. at 19-20. However, a sole owner and his or her spouse can qualify as "participants" in the company's plan if the plan covers one or more employees in addition to the owner and his or her spouse. *Yates*, 541 U.S. 1.

Plaintiffs argue that, under the regulation, Motor Valet has no employees and thus no participants. (Dkt. No. 7-5 at 7-14.) Plaintiffs' argument is without merit. At the time of the notice of discontinuance, Motor Valet's plan covered Donald Penoyer, his son, and LaVerne

Penoyer.  (Dkt. No. 7-3 at ¶ 14.)  Neither Donald Penoyer's son nor LaVerne Penoyer are the spouse of Donald Penoyer.  At other points in time, the Motor Valet plan has covered Donald Penoyer's father, Donald Penoyer's brother, and two unrelated employees.  (Dkt. No. 7-3 at ¶ 6 and Dkt. No. 11.)  None of those individuals are the spouse of Donald Penoyer.  Therefore, the regulation, by its own plain language, is inapplicable.

Plaintiffs cite *Meredith v. Time Ins. Co.*, 980 F.2d 352 (5th Cir. 1993).  That case is distinguishable.  There, the only people covered by the plan were the business owner and his spouse.  Here, as discussed above, the plan covers people in addition to the owner and his spouse.

Plaintiffs also cite *Matinchek v. John Alden Life Ins. Co.*, 93 F.3d 96 (3d Cir. 1996).  That case is distinguishable because it, like *Meredith*, involved a plan that covered only a husband and wife who co-owned a business.  *Matinchek*, 93 F.3d at 102 ("It is undisputed that Matinchek and his wife are the sole owners of the Matinchek Funeral Home, and that the Matincheks are the only ones covered under the ... insurance policy").  The court did state in *dicta* that "ERISA does not govern this dispute because an insurance coverage plan covering only a sole business owner *and his or her immediate family members* cannot qualify as an employee welfare benefit plan under ERISA."  *Matinchek*, 93 F.3d at 101 (emphasis added).  However, the Third Circuit later rejected the interpretation of that *dicta* that Plaintiffs now advance.  *Leckey v. Stefano*, 263 F.3d 267 (3d Cir. 2001)(Alito, J.)(holding that a plan covering a man and his step-daughter who co-owned a business had "employees" under the regulation because the two, although related, were not spouses).

Accordingly, Motor Valet's plan has "participants" under ERISA.

### C. Motor Valet "Established or Maintained" Its Plan Under ERISA.

In order to qualify as an employee welfare benefit plan under ERISA, the plan must be "established or maintained by an employer." 29 U.S.C. § 1002(1) (1999). As discussed above, Motor Valet is an "employer" for the purposes of ERISA. Plaintiffs argue, however, that they did not establish or maintain the plan. (Dkt. No. 7-5 at 15-16.)

    1. *Motor Valet "Established" Its Plan Under ERISA.*

"The crucial factor in determining if a plan has been established is whether the purchase of the insurance policy constituted an expressed intention by the employer to provide benefits on a regular and long term basis." *Wickman v. Northwestern Nat'l Ins. Co.*, 908 F.2d 1077, 1083 (1st Cir. 1990). This intention exists if:

> from the surrounding circumstances a reasonable person could ascertain the intended benefits, beneficiaries, source of financing, and procedures for receiving benefits. Some essentials of a plan, fund, or program can be adopted, explicitly or implicitly, from sources outside the plan, fund, or program-e.g., an insurance company's procedure for processing claims, but no single act in itself necessarily constitutes the establishment of the plan, fund, or program. For example, the purchase of insurance does not conclusively establish a plan, fund, or program, but the purchase is evidence of the establishment of a plan, fund, or program; *the purchase of a group policy or multiple policies covering a class of employees offers substantial evidence that a plan, fund, or program has been established*.

*Donovan*, 688 F.2d at 1373 (emphasis added).

Here, Motor Valet purchased a group policy from Guardian and agreed to "make the plan available to all its present and future eligible employees." (Dkt. No. 9-2.) This is substantial evidence that Motor Valet "established" a plan. Moreover, a reasonable person could ascertain the intended benefits (the benefits specified in the application and the policy), beneficiaries (the

employees and family members listed as beneficiaries in the application and amendments), source of financing (Motor Valet paid the premiums), and procedures for receiving benefits (presumably these were laid out in the materials that Guardian sent to Motor Valet).  Therefore, Motor Valet "established" the plan under ERISA.

For the purposes of ERISA, it is only necessary that an employer "establish *or* maintain" a plan.  Accordingly, even if Motor Valet did not "maintain" its plan, the plan is an employee benefit plan under ERISA.  However, I will briefly discuss whether Motor Valet also "maintained" its plan.

    2.    *Motor Valet "Maintained" the Plan.*

Plaintiffs do not explicitly argue that they did not "maintain" the plan, although they implicitly argue that they did not maintain the plan because "there existed no ongoing administrative scheme and no habitual administrative or regulatory duties with respect to the Policy."  (Dkt. No. 7-5 at 17.)  However, Plaintiffs have not cited any authority holding that such a scheme is necessary in order for an employer to "maintain" a plan within the meaning of ERISA.  Plaintiffs cite *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1 (1987) for the proposition that the administrative realities of employee benefit plans require an employer to undertake "a host of obligations, such as determining the eligibility of claimants, calculating benefit levels, making disbursements, monitoring the availability of funds for benefit payments, and keeping appropriate records in order to comply with applicable reporting requirements."  Plaintiffs then state, without citation, that "[a]n administrative scheme with these characteristics would be *necessary* to maintain a plan." (Dkt. No. 7-5 at 15, emphasis added.)  Each of those characteristics is not "necessary" to a finding that the employer maintained a plan.  To the

contrary, at least one court has held that an employer's mere payment of the premiums due under the policy constitutes "maintaining" the plan. *McFarland v. Union Central Life Ins. Co.*, 907 F. Supp. 1153, 1160 (E.D. Tenn. 1995). Here, as discussed above, Motor Valet paid the premiums on the policy. In addition, as Guardian notes, Motor Valet received reports from Guardian listing the eligible employees who had been approved for coverage under the policy, notified Guardian when new employees became eligible for coverage, and submitted reports to Guardian certifying its continued eligibility for the policy. (Dkt. No. 8 at 13.) Accordingly, Motor Valet "maintained" its plan.

### IV.     CONCLUSION

Plaintiffs' action is a lawsuit by a plan participant to recover benefits from an employee benefit plan. Accordingly, it is preempted by ERISA and was properly removed from state court to this Court, which has exclusive jurisdiction. Therefore, Plaintiffs' motion to remand (Dkt. No. 7) is **DENIED**.

Dated: January 15, 2009
       Syracuse, New York

George H. Lowe
United States Magistrate Judge